# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **TRISTAN JAMES GUNDERSON,** | : |
| | : |
|     **Plaintiff,** | : Case No. 2:25-cv-00301 |
| | : |
| v. | : Judge Algenon L. Marbley |
| | : |
| **HON. JENIFER MURPHY BURNAUGH,** | : Magistrate Judge Kimberly A. Jolson |
|     *et al.* | : |
| | : |
|     **Defendants.** | : |

## OPINION & ORDER

This matter comes before this Court on *pro se* Plaintiff Tristan James Gunderson's "Emergency Motion for Temporary Restraining Order and Motion to Stay State Court Proceedings in Morrow County Municipal Court." (ECF No. 16). Plaintiff, who is "presently a party to proceedings in the Morrow County Municipal Court arising out of a traffic citation," (*id*. at 2), seeks an order enjoining the Morrow County Municipal Court ("MCMC") from "holding the May 16, 2025 trial" and "from undertaking any further proceedings involving Plaintiff until further order of this Court." (*Id*. at 7). Plaintiff also seeks a stay of "all further proceedings in MCMC relating to the subject matter of this case, including Case No. OHP591306012420252319." (*Id.*). Defendant Amy Braddock opposes the motion. (ECF No. 29).

For the reasons set forth below, Plaintiff's motion for a TRO (ECF No. 16) is **DENIED.**

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff, a *pro se* litigant residing in Texas, brings this action challenging the omission of "verifiable timestamps" in "at least six court documents" issued between March 3 and March 21, 2025 in the Morrow County Municipal Court ("MCMC"). (ECF No. 8 ¶¶ 7, 8). The documents consist of Notices issued by the Morrow County Prosecutor's Office ("MCPO") and Judgment

Entries issued by the MCMC notifying Plaintiff of hearings related to "Case #: 2025TRD650," "Violation: Speed > 70 Mph On Freeway." (*See e.g.*, ECF No. 1-1 at 3).[1] Each document was accompanied by a Certificate of Service stating, *inter alia*, that it was served "by e-mail pursuant to Loc. R. II.G.5 to Tristan James Gunderson, Defendant, at [. . .]@gmail.com." (*See e.g.*, ECF No. 1-1 at 4). Plaintiff alleges that the documents are defective because they do not include the date and time of service, including the Coordinated Universal Time (UTC). (*See* ECF No. 8 ¶ 8). These defects, according to Plaintiff, prevented him "from confirming exact notice"; "impacted [his] ability to track deadlines"; and "obstructed [his] ability to respond meaningfully within the deadlines provided by law." (*See id.* ¶¶ 8–10). Plaintiff contends that, "[d]espite the defect being raised in the state court proceedings, Defendants continued to rely on and submit documents that lacked compliance with Morrow County Local Rules and the Federal Rules of Civil Procedure." (*Id.* ¶ 9).

According to Plaintiff, the omission of timestamps reflects "a lack of training or a willful disregard of procedural obligations" by Defendants Amy Braddock, the Clerk of Court for the MCMC; Andrew Wick, an Assistant Prosecutor employed by the MCPO; Sheri Clever, the Clerk of Court for the Morrow County Court of Common Pleas; and Jennifer Murphy Burnaugh, a judicial officer of the MCMC. (*Id.*). Plaintiff also asserts that the procedural defects "were not isolated clerical mistakes but part of a larger pattern of procedural misconduct that impaired his ability to receive timely notice and respond meaningfully," (*id.* ¶ 11), and that "Morrow County maintained a policy, custom, or failure to train/supervise that resulted in systemic procedural noncompliance," (*id.* ¶ 15).

---

[1] *See* ECF No. 1-1 at 1 (March 3, 2025 MCMC Judgment Entry stating that "based upon Defendant's e-mail motion for a continuance of [hearing] scheduled for February 11, 2025 . . . for the reason that [he] needs more TIME TO RETAIN COUNSEL . . . this matter is hereby continued to March 18, 2025 at 9:00 AM."); *id.* at 3 (March 3, 2025 MCPO Notice of March 18, 2025 hearing); ECF No. 1-2 at 1 (March 21, 2025 MCMC Judgment Entry granting Defendant's request to continue the hearing to April 3, 2025).

Based on these alleged facts, Plaintiff brings four claims against Morrow County, Braddock, Wick, Clever, and Burnaugh: (1) "Violation of Procedural Due Process" under 42 U. S. C. § 1983; (2) "Constitutional Violations Based on Pattern and Practice" under 42 U. S. C. § 1983; (3) "Municipal Liability Under *Monell*"; and (4) "Violation of Fed. R. Civ. P. 5 and Local Rule 5.1." (*See id.* ¶¶ 3–7; 13–22). He seeks relief in the form of a declaratory judgment "that Defendants' actions violated Plaintiffs constitutional rights"; injunctive relief "requiring adherence to court rules regarding service"; compensatory damages "in the amount of $42,000,000"; and punitive damages in the amount "of $500,000,000 for willful misconduct." (*See id.* at 10).

### B. Procedural History

On March 25, 2025, Plaintiff filed his original complaint against Morrow County; the Morrow County Prosecutor; Sheri Clever; and Jennifer Murphy Burnaugh. (*See* ECF No. 1). On April 7, 2025, the County Prosecutor and Defendant Clever filed a motion to dismiss (ECF No. 5), which Plaintiff moved to strike (ECF No. 6). On April 17, 2025, Defendant Burnaugh filed a motion to dismiss (ECF No. 7), which Plaintiff also moved to strike (ECF No. 11).

On April 18, 2025, Plaintiff filed an Amended Complaint, specifying additional defendants, including Defendant Braddock. (ECF No. 8). On April 28, 2025, the County Prosecutor and Defendant Clever moved to dismiss the Amended Complaint (ECF No. 13), which Plaintiff opposed and moved to strike (ECF No. 21). On May 8, 2025, Plaintiff moved for a temporary restraining order to enjoin MCMC "from undertaking any further proceedings involving Plaintiff until further order of this Court," and to stay "all further proceedings in MCMC relating to the subject matter of this case, including Case No. OHP591306012420252319." (*See* ECF No. 16 at 7). On May 9, 2025, Plaintiff moved to dismiss Defendant Clever as a misjoined party (ECF No. 20). On May 12, 2025, Defendant Braddock moved to dismiss the Amended Complaint

3

(ECF No. 19). On May 13, 2025, Defendant Braddock opposed Plaintiff's motion for a TRO. (ECF No. 29).

Given the "emergency" relief that Plaintiff seeks in his motion for a TRO (ECF No. 16), this Order addresses only that motion.

## II. STANDARD OF REVIEW

A TRO is an emergency measure, meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *NetChoice, LLC v. Yost*, 711 F. Supp. 3d 844, 852 (S.D. Ohio 2024) (quoting *Hartman v. Acton*, 613 F. Supp. 3d 1015, 1021 (S.D. Ohio 2020)). Federal Rule of Civil Procedure 65(b) "requires a Court to examine on application for a TRO, whether 'specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant.'" *Id.* (quoting Fed. R. Civ. P. 65(b)(1)(A)). The Sixth Circuit has explained that courts may also consider the traditional preliminary injunction factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc).

To obtain temporary injunctive relief, "it is of paramount importance that the party establish immediacy and irreparability of injury." *NetChoice*, 711 F. Supp. 3d at 852; *Doe v. Univ. of Cincinnati*, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015) (noting that "standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo") (citing *Motor Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2,

98 S.Ct. 359, 54 L.Ed.2d 439 (1977)). While a court is permitted to consider the other factors, "immediacy and irreparability of harm are threshold considerations since '[a] temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo.'" *NetChoice*, 711 F. Supp. 3d at 852 (quoting *Marshall v. Ohio Univ.*, 2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015) (citation omitted)); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996). The "burden of proving that the circumstances 'clearly demand' such an extraordinary remedy is a heavy one," since the party seeking "the injunction must establish its case by clear and convincing evidence.'" *Id.* (internal quotation marks and citation omitted); *Overstreet v. Lexington-Fayette UrbanCnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Honeywell, Inc. v. Brewer-Garrett Co.*, 145 F.3d 1331 (6th Cir. 1998).

### III.  LAW AND ANALYSIS

Plaintiff argues that a TRO enjoining the county court proceedings is warranted because he has "demonstrated that the proceedings . . . are being conducted in a manner that violates fundamental principles of due process, including the issuance of contradictory trial orders, improper service, and inconsistent application of Ohio's Speedy Trial Statute," and the documentary evidence he submitted reflects "a troubling pattern of procedural misconduct, administrative confusion, and judicial irregularities that undermine the integrity of the state court process and compromise Plaintiff's ability to defend himself fairly." (ECF No. 16 at 8).  In opposition, Defendant Braddock argues that the Anti-Injunction Act, 28 U.S.C. § 2283, defeats Plaintiff's TRO motion; that this Court should abstain under *Younger v. Harris,* 401 U.S. 37 (1971); and that Plaintiff has not satisfied the requirements to justify issuing a TRO. (*See generally* ECF No. 29).

### A. Likelihood of Success on the Merits

#### 1. *The Anti-Injunction Act*

The Anti-Injunction Act, 28 U.S.C. § 2283, establishes "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within three specifically defined exceptions." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004). A district court may enjoin state court proceedings only: "(1) where Congress expressly authorizes, (2) where necessary in aid of the court's jurisdiction, and (3) where necessary to protect or effectuate the court's judgments." *Id*.

The Supreme Court has held explicitly that "§ 1983 is an Act of Congress that falls within the 'expressly authorized' exception of [the Anti–Injunction Act]." *Mitchum v. Foster*, 407 U.S. 225, 243 (1972). Because Plaintiff raises constitutional claims through § 1983, the *Mitchum*'s exception to the Anti–Injunction Act arguably applies. *See Gottfried v. Med. Plan. Servs., Inc.*, 142 F.3d 326, 329 (6th Cir. 1998). Nonetheless, "a determination that 28 U.S.C. § 2283 does not prohibit injunctive relief in this case does not compel an award of such relief." *Caughorn v. Phillips*, 981 F. Supp. 1085, 1087–88 (E.D. Tenn. 1997). Principles of equity, comity, and federalism—principles on which the *Younger* abstention doctrine is based—weigh against issuing the requested TRO here. *See id*.

#### 2. Younger *Abstention*

The *Younger* abstention doctrine generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims "in three different circumstances": (1) "when there is an ongoing state criminal prosecution"; (2) "when there is a civil enforcement proceeding that is akin to a criminal prosecution"; and (3) "when there is a civil proceeding involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *See Aaron v. O'Connor*, 914 F.3d 1010, 1016 (6th Cir. 2019) (cleaned up); *Younger,* 401 U.S. 37.

6

Courts consider three factors in determining whether to abstain from interfering in a state proceeding. *See Aaron*, 914 F.3d at 1018 (citing the three-factor test laid out in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)).  If "(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims," a court "may abstain from hearing the federal claim." *Id*. (internal quotation marks and citation omitted).

*Younger* does not require abstention in deference to state judicial proceeding, however,  if: (1) "the state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975); (2) "the challenged statute is flagrantly and patently violative of express constitutional prohibitions," *Moore v. Sims*, 442 U.S. 415, 424 (1979) (quoting *Huffman*, 420 U.S. at 611); or, (3) there is "an extraordinarily pressing need for immediate federal equitable relief."  *Kugler v. Helfant*, 421 U.S. 117, 125 (1975). These exceptions have been interpreted narrowly. *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986).

### a. Ongoing State Proceeding and Important State Interest

The first two *Younger* conditions consider whether "state proceedings are currently pending"; and whether the proceedings "involve an important state interest." *Aaron*, 914 F.3d at 1016.  Plaintiff does not dispute that his federal action challenges pending traffic-related proceedings before the MCMC, or that he is scheduled for trial before the MCMC on May 16, 2025. (*See generally* ECF No. 16).  It is also undisputable that the state has an important interest in in enforcing its traffic laws and ensuring public safety. *See Mackey v. Montrym*, 443 U.S. 1, 17 (1979) (stating that the state has a paramount interest in preserving the safety of its public highways); *Gorenc v. City of Westland*, 72 F. App'x 336, 338-39 (6th Cir. 2003) (finding abstention under *Younger* appropriate to avoid "interference with the state traffic proceedings

7

pending in state court," which "implicate the important state and local interest of the enforcement of traffic laws"). The first and second *Younger* requirements are therefore satisfied.

### b. Opportunity to Assert Federal Challenges in the State Court Proceedings

The third requirement of *Younger* asks whether the state proceedings afford an adequate opportunity to raise the federal claims. *Moore,* 442 U.S. at 430. "[T]he burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.'" *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987).

Plaintiff's motion for a TRO argues that this Court is not required to abstain under *Younger* because the "state proceeding does not provide an adequate forum to adjudicate constitutional claims." (ECF No. 16 at 4–5). There has been no showing, however, that Plaintiff is barred from asserting his federal claims in the action pending before MCMC. Indeed, in his **May 5, 2025** objections before the MCMC, Plaintiff asserted the same arguments he now brings before this Court, namely that the state court proceedings are tainted with "procedural irregularities involving improper or incomplete service, defective certificates of service, and scheduling discrepancies involving court personnel named as defendants in a related federal civil rights action." (*See* ECF No. 16-1 at 12). Plaintiff's claim that "[d]espite these filings, the May 16 hearing remains scheduled," (ECF No. 16 at 3), is insufficient to "show[] that state procedural law barred [him] from presenting [his] constitutional claims—which [he] did present." *See Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013). Nothing prevents Plaintiff from continuing to raise these claims in state court, and Plaintiff may appeal any potential adverse final decision of the trial court. *See Aaron*, 914 F.3d at 1019.

Accordingly, the third condition for *Younger* abstention is satisfied. Because the three requirements of *Younger* are satisfied, this Court next considers whether an exception applies.

### c. Bad Faith Exception

Plaintiff contends that even if abstention under *Younger* is appropriate, the bad faith exception applies because Defendants "have repeatedly filed documents with inaccurate or incomplete Certificates of Service, issued contradictory notices, and failed to comply with the local rules of court." (*See* ECF No. 16 at 6). He also contends "that the State has selectively and inconsistently invoked . . . Ohio's Speedy Trial Statute[] to justify the May 16, 2025 trial date." (*Id.*).

Cases where the bad-faith exception applies "are exceedingly rare, particularly where a plaintiff seeking to defeat an abstention argument has failed to avail himself first of state appellate processes before seeking relief in federal court." *Kalniz v. Ohio State Dental Bd.*, 699 F. Supp. 2d 966, 973 (S.D. Ohio 2010); *see also Berger v. Cuyahoga Cty. Bar Ass'n*, 775 F. Supp. 1096, 1100 (N.D. Ohio 1991) (noting that "the standard for evaluating claims of bad faith and bias is difficult to meet"). Indeed, as this Court has recognized, "no Sixth Circuit case . . . has ever authorized federal intervention under the bad faith or harassment exception." *Kalniz*, 699 F. Supp. 2d at 973. Findings of bad faith are instead limited to extreme facts, such as when Texas city police officers "repeatedly engaged in searches and seizures they knew to be unlawful," or when a county prosecutor office "filed twelve separate actions . . . in order to harass the plaintiffs and drain them of all their financial resources." *Id*. at 973−74 (citing *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82 (5th Cir. 1992); *Video Store, Inc. v. Holcomb*, 729 F. Supp. 579, 580 (S.D. Ohio 1990)).

Even if Plaintiff's allegations of procedural improprieties before the MCMC are assumed to be true, none rises to the level of egregious bad faith or harassment that mirror the facts of the aforementioned cases. *See Doe v. Univ. of Kentucky*, 860 F.3d 365, 371 (6th Cir. 2017). Nor does Plaintiff allege any facts suggesting that the state action itself stems from an improper purpose— i.e., that the state court proceedings were initiated "without a reasonable expectation of obtaining

9

a valid conviction." *See Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975) (noting that "'bad faith' in [the *Younger* abstention] context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction").

Plaintiff therefore fails to show that the bad faith exception to the *Younger* abstention doctrine applies.

### B.  Irreparable Harm

The irreparable harm inquiry informs both the TRO analysis and the appropriateness of abstaining under *Younger*. Typically, courts presume irreparable harm "if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet*, 305 F.3d 5at 578. "But if a court finds it unlikely that a plaintiff will succeed on the merits of a constitutional claim, the 'argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit.'" *Doe v. The Ohio State Univ.*, 136 F. Supp. 3d 854, 870 (S.D. Ohio 2016) (quoting *Overstreet*, 305 F.3d at 578).

Plaintiff's motion for a TRO focuses solely on the harm he faces as a result of the violation of his procedural due process rights. (*See* ECF No. 16 at 6). According to Plaintiff, "[c]ontinued prosecution of the state case while the federal action is pending will cause irreparable harm, deny Plaintiff fair process, and risk rendering this federal action moot or duplicative." (*Id.*). And because the relief requested in his federal complaint "includes declaratory and injunctive remedies addressing the exact procedural abuses ongoing in the municipal court," he contends that he has "no adequate remedy at law if those abuses are allowed to continue unchecked." (*Id.*). Although Plaintiff's federal action asserts constitutional claims, he is not likely to succeed on the merits of those claims as to warrant a presumption of irreparable harm. *See supra* Section III.A; *Hartman v. Acton*, 613 F. Supp. 3d 1015, 1025 (S.D. Ohio 2020) ("Where a Plaintiff fails to show a

likelihood of success on the merits of their claim that their constitutional rights were violated, a finding of irreparable harm is not warranted.").

Nor has Plaintiff demonstrated a "danger of irreparable loss [that] is both great and immediate" that warrants invoking an exception to *Younger*. *See* 401 U.S. at 45. As discussed above, the challenged proceeding is "already pending in the state court, affording [the plaintiff] an opportunity to raise his constitutional claims," and "[t]here is no suggestion that this single prosecution against [Plaintiff] is brought in bad faith or is only one of a series of repeated prosecutions to which he will be subjected." *See Younger*, 401 U.S. at 49. So, "the injury that [Plaintiff] faces is solely that incidental to every criminal proceeding brought lawfully and in good faith." *Id.* (internal quotation marks and citation omitted).

This Court therefore concludes that Plaintiff has not demonstrated irreparable harm to justify this Court's issuance of a TRO or to avoid the *Younger* abstention doctrine. Accordingly, the likelihood of success and irreparable harm factors weigh against issuing a TRO.

### C. Balance of Harms and Public Interest

The balance of harms and public interest factors also weigh against granting Plaintiff's requested relief, because the principles of comity between state and federal courts, as applied through the *Younger* abstention doctrine, are meant to prevent this type of action. *See e.g.*, Kewadin Casinos Gaming Auth. v. Draganchuk, 584 F. Supp. 3d 468, 476 (W.D. Mich. 2022) ("There is little public interest in the district court interfering in an active state court case, particularly one where the state court is actively attempting to enforce its contempt power.").

Because a TRO "is an extraordinary and drastic remedy," and Plaintiff has not "by a clear showing, carrie[d] the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation marks and citation omitted), this Court declines to issue a TRO.

11

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for a TRO (ECF No. 16) is **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE**

**DATED: May 15, 2025**